IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

TERESA BAKER                                                                                          PLAINTIFF

v.                              CIVIL ACTION NO. 1:23-CV-57-SA-RP

ALLSTATE INDEMNITY CO.                                        DEFENDANT

ORDER AND MEMORANDUM OPINION

On February 10, 2023, Teresa Baker initiated this civil action by filing her Complaint [2] against Allstate Indemnity Company in the County Court of Lee County, Mississippi.[1] On April 12, 2023, Allstate filed a Notice of Removal [1], removing the action to this Court on diversity grounds. Before the Court is Allstate's Motion for Partial Summary Judgment [140]. The Motion [140] has been fully briefed and is now ripe for review. The Court is prepared to rule.

*Relevant Background*

Teresa Baker alleges that the roof on her rental property located in Aberdeen, Mississippi sustained wind and rain damage during a storm on September 29, 2021. As a result of the damage, Baker contends that the interior of the property, as well as items inside, were destroyed from rain coming through the roof. Immediately after the storm, Baker filed a claim under her homeowner's policy with Allstate. The claim was assigned to Shelley Anderson, a catastrophic property adjuster with Allstate. Anderson then began investigating Baker's claim.

On November 11, 2021, a third-party inspector on behalf of Allstate, Justin Warren, inspected the property.[2] Following this inspection, Warren submitted a report with his findings,

---

[1] The original party sued in this action was Allstate Insurance Company. However, Allstate Indemnity Company was substituted via Agreed Order. *See* [10].
[2] Warren was hired as a subcontractor by Hancock Claims Consultants, a third-party company originally hired by Allstate to investigate Baker's claimed loss.

which indicated that there was no evidence of hail or wind damage to Baker's roof. Warren documented his findings on Allstate's "Vendor Virtual Inspection Form," which was customarily completed when the insurance adjuster participated in the inspection virtually. *See* [147], Ex. 5 at p. 2. During their depositions, Anderson and Warren both testified that they could not specifically recall whether Anderson participated virtually in the inspection, though the submitted form appears to indicate that she did. The submitted inspection form included one photograph of Baker's roof.

Thereafter, on November 15, 2021, Allstate sent Baker a letter denying her claim. In the denial letter, Allstate claimed that it could not provide coverage for the exterior and/or interior damage because the damage was caused by excluded perils.[3] The denial letter was signed by Anderson on behalf of Allstate and did not indicate if all or only certain exclusions were the basis for the denial of Baker's claim. During her deposition, Anderson testified that the denial "may fall under all categories" when asked how an Allstate customer would know specifically under which exclusion the claim is being denied in reviewing the letter. [147], Ex. 2, at p. 24.

Shortly after receiving the denial letter, Baker called Allstate and spoke with Anderson. Baker contends that Anderson informed her that Allstate would not pay her claim because Anderson thought a possum ate her shingles and because Baker did not have wind and rain protection under her policy. Notably, the denial letter did not indicate that Baker's claim was

---

[3] Summarily, the policy exclusions listed in Allstate's denial letter provide no coverage for damage caused by 1) wear and tear including "aging, marring, scratching, deterioration, inherent vice, or latent defect," 2) "water or any other substance on or below the surface of the ground, regardless of its source… which exerts pressure on, or flows, seeps or leaks through, any part of the residence premises," 3) "settling, cracking, shrinking, bulging or expansion of… roofs or ceilings," 4) "insects rodents, birds or domestic animals," 5) "… seepage or leakage over a period of weeks, months, or years, of water" from plumbing, heating or cooling systems or domestic appliances or plumbing fixtures, 6) acts of a tenant or guests of a tenant with exceptions, and 7) "inadequate or defective… workmanship, repair, construction, renovation… or maintenance" among other examples related to planning, construction, or maintenance. [85], Ex. 2 at p. 1.

denied due to lack of wind and rain coverage. Anderson testified that she did not recall any telephone conversation with Baker.

After speaking with Anderson, Baker alleges that she spoke with Andy Dyson, a local Allstate representative. She alleges that Dyson informed her that she *did* have wind and rain protection under her policy. Thereafter, Baker alleges that she requested to speak with an Allstate claims manager to express that she had been given incorrect information regarding coverage by Anderson. She spoke with Anderson's manager, Jonathan Gien, who evaluated the claim file and ultimately agreed with Anderson's decision to deny the claim. Gien testified that he recalled speaking with Baker and telling her that, based on his review of the claim file, her claimed damage was not a covered loss because the roof of her property exhibited signs of wear and tear and required maintenance.

Baker alleges that Allstate "failed to properly and thoroughly investigate [her] claim and denied coverage" in bad faith. [148] at p. 2. She contends that the reasons Allstate gave her for denying her claim were incorrect and inconsistent. She brings the instant suit against Allstate for negligence, bad faith, and breach of contract.[4] In its present Motion [140], Allstate seeks dismissal of Baker's bad faith claim. Baker opposes the Motion [140].

*Summary Judgment Standard*

Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

---

[4] This Court previously dismissed Baker's negligence claim *with prejudice*. *See* [84]. Baker was also permitted to file her Amended Complaint [85] wherein she asserted a claim for bad faith.

trial." *Nabors v. Malone*, 2019 WL 2617240, at *1 (N.D. Miss. June 26, 2019) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

"The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.'" *Id*. (quoting *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548). "The nonmoving party must then 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting *Celotex*, 477 U.S. at 324, 106 S. Ct. 2548). Importantly, "the inferences to be drawn from the underlying facts contained in the affidavits, depositions, and exhibits of record must be viewed in the light most favorable to the party opposing the motion." *Waste Mgmt. of La., LLC v. River Birch, Inc.*, 920 F.3d 958, 964 (5th Cir. 2019) (quoting *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 646 (5th Cir. 1997)). However, "[c]onclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial." *Nabors*, 2019 WL 2617240 at *1 (citing *TIG Ins. Co. v. Sedgewick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)) (additional citations omitted).

*Analysis and Discussion*

Mississippi law applies because this action is before the Court on the basis of diversity jurisdiction. *See*, *e.g.*, *Klocke v. Watson*, 936 F.3d 240, 244 (5th Cir. 2019) (citing *Hanna v. Plumer*, 380 U.S. 460, 465, 85 S. Ct. 1136, 14 L. Ed. 2d 8 (1965)) ("The *Erie* line of authorities holds that substantive state law must be applied in federal courts in diversity cases[.]").

As noted above, Allstate solely seeks dismissal of Baker's bad faith claim. "Under Mississippi law, insurers have a duty 'to perform a prompt and adequate investigation and make a reasonable, good faith decision based on that investigation' and may be liable for punitive damages

4

for denying a claim in bad faith." *Broussard v. State Farm Fire & Cas. Co.*, 523 F. 3d 618, 627 (5th Cir. 2008) (quoting *Liberty Mut. Ins. Co. v. McKneely*, 862 So. 2d 530, 535 (Miss. 2003)). "In order to prevail in a bad faith claim against an insurer, the plaintiff must show that the insurer lacked an arguable or legitimate basis for denying the claim, or that the insurer committed a wilful or malicious wrong, or acted with gross and reckless disregard for the insured's rights." *Hardaway v. Howard Indus., Inc.*, 378 So. 3d 946, 957 (Miss. 2024) (citing *McKneely*, 862 So. 2d at 533).

"In examining the concept of an arguable basis, the initial burden placed on the insurer is low: it need only show that it had reasonable justifications, either in fact or in law[,] for its actions." *Lee v. State Farm Fire & Cas. Co.*, 2024 WL 4525305, at *4 (S.D. Miss. Aug. 12, 2024) (quoting *James v. State Farm Mut. Ins. Co.*, 743 F. 3d 65, 70 (5th Cir. 2014)) (internal quotations omitted). Even if an exclusion or defense does not ultimately bar coverage, it can still constitute an arguable basis. *Sobley v. S. Nat. Gas Co.*, 302 F. 3d 325, 341 (5th Cir. 2002). "Thereafter, the insured bears the burden of demonstrating that the insurer had no arguable reason for the [denial]." *Lee*, 2024 WL 4525305 at *4 (quoting *James*, 743 F. 3d at 70) (internal quotations omitted). "The burden on the plaintiff is heavy: she must demonstrate that 'there was no reasonably arguable basis for denying the claim.'" *Id*. (quoting *Dey v. State Farm Mut. Auto. Ins. Co.*, 789 F. 3d 629, 633 (5th Cir. 2015)).

The Mississippi Supreme Court has held that an arguable basis "[i]s one in support of which there is some credible evidence. There may well be evidence to the contrary. A person is said to have an arguable reason for acting if there is *some* credible evidence that supports the conclusions on the basis of which he acts." *Blue Cross & Blue Shield of Miss., Inc. v. Campbell*, 466 So. 2d 833, 851 (Miss. 1984) (emphasis added). The court has further held that an arguable basis "[i]s nothing more than an expression indicating the act or acts of the alleged tortfeasor do not rise to

5

the heightened level of an independent tort." *State Farm Mut. Auto. Ins. Co. v. Grimes*, 722 So. 2d 637, 646 (Miss. 1998). The determination of whether an arguable basis exists for the denial of coverage "is an issue of law for the court." *Broussard*, 523 F. 3d at 628 (citations and internal quotations omitted); *see also Murphree v. Fed. Ins. Co.*, 707 So. 2d 523, 530 (Miss. 1997).

Allstate contends that there was an arguable basis to deny Baker's claim because the damage to the property was caused by "an excluded peril" under the policy. [141] at p. 5. While Allstate's denial letter listed seven policy exclusions, in its Memorandum [141] Allstate only argues that its "arguable basis" for denial falls under one of the listed exclusion provisions—wear and tear. It argues that "there is ample evidence that supports [its] denial" of Baker's claim for this reason and points to Warren's inspection report, Luke Griffin's expert report, and photographs of the subject property taken by Baker. [141] at p. 6.

In response, Baker avers that the exclusions set forth in the denial letter "were obviously incorrect, unfounded, and inadequate reasons for denying [her] claim." [148] at p. 3. The Court finds it noteworthy to point out, however, that Baker does not rebut Allstate's contention that the wear and tear exclusion provided an arguable basis for its denial of her insurance claim.[5] Instead, Baker spends a considerable amount of time arguing that there is no evidence that supports the applicability of the policy exclusion for damages caused by a rodent.

It is undisputed in this case that Allstate provided more than one reason for its denial. The Court will analyze whether Allstate had an arguable basis for denying Baker's claim pursuant to the wear and tear policy exclusion, although Baker does not appear to counter this reason in her Response Memorandum [148].

---

[5] In fact, the words "wear and tear" only appear in Baker's Response Memorandum [148] once in the factual section of the brief when providing verbatim the list of exclusion provisions contained in Allstate's denial letter. *See* [148] at p. 2.

As an initial matter, it is important to note that Baker's bad faith claim only stems from the *initial* denial of her claim. *See* [148] at p. 22. Therefore, Allstate's arguments that Luke Griffin's expert report and the photographs taken by Baker support its denial of the claim are easily discarded. In its Memorandum [141], Allstate admits that it retained Luke Griffin as an expert *after* commencement of this litigation to evaluate the claim and provide an opinion as to the cause of the property damage. Griffin's report is dated September 29, 2023. *See* [85], Ex. 3 at p. 1. Thus, Allstate could not have considered Griffin's findings in reaching its decision to deny Baker's claim prior to November 15, 2021—the date of its denial letter. As to the photographs taken by Baker, Allstate does not provide a date for when the photographs were taken and does not argue that these were evaluated prior to its initial denial of the claim. In other words, Allstate does not contend that the photographs were considered as part of the denial decision. In her Response Memorandum [148], Baker alleges that she provided these photographs to Allstate on September 18, 2022—nearly one year after her claim had been denied. While Griffin's report and Baker's photographs may be relevant as evidence supporting Allstate's *continued* denial of the claim even after litigation commenced, they are not relevant to the Court's analysis of Baker's bad faith claim for the initial denial of her claim.

The Mississippi Supreme Court, as well as the Fifth Circuit, has held that insurers may properly rely on the findings of adjusters, investigators, or other professionals in denying claims. *See, e.g., Hoover v. United Servs. Auto. Ass'n*, 125 So. 3d 636, 643 (Miss. 2013) (finding that the insurer's reliance on an engineering report and the investigation of its adjusters supported the trial court's "arguable basis" ruling in favor of the insurer); *Deloach v. Allstate Vehicle & Prop. Ins. Co.*, 2019 WL 1440298, at *3 (N.D. Miss. Mar. 29, 2019) (finding that the insurer had a reasonable justification to deny payment where Allstate's agent and appraiser determined insured's loss was

not covered by the policy); *Broussard*, 523 F. 3d at 628 ("State Farm had an arguable basis for denying [the] claim based on the observations of its adjuster…").

Allstate relies on *Broussard* to support its position that it had an arguable basis to deny Baker's claim. *Id*. at 618. In that case, the plaintiffs' home was completely destroyed during Hurricane Katrina and their insurance coverage with State Farm excluded losses caused by water damage. *Id*. at 622-23. A claims adjuster subsequently inspected the site and concluded that there was evidence that the home "was more damaged by flood than wind" and accordingly denied the claim in its entirety. *Id*. The plaintiffs filed suit against State Farm for breach of contract and bad faith. *Id*. On appeal, the Fifth Circuit analyzed whether the district court erred in denying State Farm's motion for judgment as a matter of law and instructing the jury on punitive damages for bad faith denial of the plaintiff's insurance claim. *Id*. at 627. In reversing the district court's decision, the court found that State Farm had an arguable basis for denying the claim "based on the observations of its adjuster regarding the position of the debris line and the condition of trees on and surrounding the property" despite "facts which suggest[ed] that wind destroyed their home prior to the arrival of the tidal surge." *Id*. at 628.

In this case, it is not clear what information Anderson relied on. Again, Anderson testified that she did not recall whether she participated virtually in the inspection with Warren and Warren likewise testified that he did not recall.[6] The parties do not dispute that Warren's report was part of Allstate's claim file at the time Anderson made the decision to deny the claim. During her deposition, Anderson was asked about an internal email she sent to Dyson on November 15, 2021 (the same date as on the denial letter) regarding her decision to deny Baker's claim. In the email,

---

[6] Warren's report, in the form of the "Vendor Virtual Inspection Form," provides the following indication: "Was the virtual collaboration successful? Yes." [147], Ex. 5 at p. 2. This certainly indicates that an Allstate representative, potentially Anderson, participated in the inspection virtually. However, neither Anderson nor Warren were able to confirm this information.

8

Anderson informs Dyson that the denial of Baker's claim was "for a multitude of reasons. [Baker] had roof damage that was either rodent causing or just decaying over time. Interior water damages were also long term." [147], Ex. 1 at p. 44. However, the email does not include any explanation for how she reached these conclusions. Anderson testified that she had not reviewed Baker's claim file since "[p]robably in 2021… when the claim was filed." [147], Ex. 2 at p. 11. She also testified that she "[didn't] even recall the claim at all." *Id.* at p. 17.

While this case is not completely analogous to *Broussard* given Anderson's lack of memory regarding the virtual inspection, it certainly supports the contention that an insurer may rely on the findings of the person evaluating the claim. Here, Anderson was the person who primarily evaluated the claim, but the claim was then re-evaluated by Gien pursuant to Baker's request for management involvement.

Gien did recall his evaluation of Baker's claim and the reasons for Allstate's denial decision:

> Q. So is there anything that you remember about this claim or any conversation that took place just off your own general knowledge?
>
> A. Yes, yes, I recall the claim following my review.
>
> Q. Okay. Can you just state to me just what you remember just off your general knowledge, and then I may ask you -- well, I probably will -- well, I am going to ask more specific questions, but can you tell me what you remember about the claim off your general knowledge?
>
> A. At the time, the claim was denied as a result of wear and inadequate maintenance to the roof, and the customer disagreed. She requested management's involvement. I became involved.

[147], Ex. 11 at p. 9.

He testified that he vaguely remembered a telephone conversation with Baker and "explaining that the roof showed signs of wear and in need of maintenance, and that wasn't related to a covered loss." *Id*. at p. 11. When asked about his evaluation of the claim, he testified as follows:

> Q. All right. So, I know when Ms. Baker, I guess asked to speak to upper management, did you just -- what did you do to, I guess, evaluate the claim? Did you look at the claim again or did you correspond with Shelley Anderson, or what did you do to look at the claim, since she was, I guess, disagreed with Shelley Anderson's decision?
>
> A. I reviewed the claim file and all of the inspection information, all of the images on file, and confirmed that I was in line with the adjuster and communicated that to the customer.
>
> Q. Okay. Do you remember anything that stood out? I know it says wear and tear. Do you know how that conclusion was reached?
>
> A. Yes, by inspecting images[7] of the roof. The roof exhibited signs of wear and tear and required maintenance.

*Id*. at p. 12-13.

Gien then testified that he relied upon Warren's inspection report to reach his conclusion that Baker's damages were not attributed to a covered loss:

> Q. Okay. And in that evaluation, were you relying on Hancock or were you relying on what you saw, or just how did that go, is it a -- were there measurements or were you just going off of look -- like, it looked like it's wear and tear so that's what it is, like that?
>
> A. The vendor company did the inspection. The images on file support a roof that's deteriorating, that's how the determination was made, was by inspecting the images on file and by evaluation.

---

[7] As noted above, Warren's report only includes one image, though Gien refers to "images" in the plural.

10

> Q. Okay. And so were you going off of what Hancock said or who is the one that made the decision -- is based off the one that Hancock says, the vendor that says wear and tear or is it upon after the adjuster looks at the pictures, then the evaluation, are they like -- at what point is the evaluator? Who does the evaluating?
>
> A. The adjuster does the evaluating.
>
> Q. Okay. So the one that did the primary evaluation of the pictures would have been Shelley Anderson?
>
> A. Correct.
>
> Q. And so then when a customer is disgruntled, then they -- it move[s] up to you, and you would either say I back up the adjuster's decision or not, is that how that would work?
>
> A. Correct, I review the information.

*Id*. at 13-14.

Warren's report does not include any conclusion as to what the cause of the damage was, but under the categories for "evidence of hail and wind" and "storm-related damages to the exterior" he denotes "0." [147], Ex. 5 at p. 2-3. During his deposition, Warren reviewed the photo of the roof that was included with his report and testified that "in [his] experience, that [did] not look like storm damage to [him]." [147], Ex. 4 at p. 30.

The United States District Court for the Southern District of Mississippi considered a similar scenario in *Lee v. State Farm Fire & Cas. Co.*, 2024 WL 4525305 (S.D. Miss. Aug. 12, 2024), a case involving a bad faith claim for "delay-of-payment." In *Lee*, the plaintiffs alleged that a hailstorm had occurred and damaged the roof and exterior of the home. *Id*. at *1. Upon their filing of a claim with their insurance company, the insurer's adjuster inspected the property and determined that there was no covered damage, including hail damage. *Id*. Plaintiffs had a roofer inspect the home who determined that there was hail damage to the property and he provided his

11

findings, as well as photographs, to State Farm. *Id*. As a result, the plaintiffs requested a re-inspection of their home, but the adjuster, after reviewing the additional photographs, determined that those photographs showed nothing new and declined to reinspect the property. *Id*. On summary judgment, the court dismissed plaintiffs' bad faith claim, finding that the insurer had an arguable basis for its actions due to the adjuster's findings from the original inspection and re-evaluation of the denial after additional pictures were submitted. *Id*. at *5.

In this case, like the adjuster in *Lee*, Gien re-evaluated Anderson's denial decision by reviewing, at minimum, the one photograph that was included with the report and Warren's inspection report. Gien determined that Anderson was correct in her decision because he found that the roof showed signs of deterioration, wear and tear, and required maintenance based on his independent review of the report and accompanying photograph. Similar to the adjuster's findings in *Lee*, Gien's conclusions did not differ from Anderson's, at least in part, after his review of the report and photograph. Warren's report, upon which Gien relied, also concluded that the damage to Baker's property was not a result of hail or wind. This report and the photograph of the roof included in the report certainly constitute *some* credible evidence that support the conclusions reached by Gien. *Campbell*, 466 So. 2d at 851 (emphasis added). Allstate relied on the investigation of its adjusters, including Gien's findings upon re-evaluating the claim, to support its denial decision. Accordingly, the Court finds that Allstate had an arguable basis to deny Baker's claim.

As noted above, after Allstate carries that burden, Baker bears the burden of proving that Allstate had no arguable basis to deny her insurance claim. *See Lee*, 2024 WL 4525305 at *4. She has not met her burden in this case.

Additionally, it bears repeating that Baker focuses on only one reason provided by Allstate for denying her claim and does not address Allstate's contention that the loss was not covered due to evidence of wear and tear. "If the trial judge determines that as a matter of law it cannot hold that the insurer had a legitimate and arguable defensive position, but [instead] that the evidence constituted disputed facts as to whether such situation existed, the trial judge should submit the arguable basis and punitive damages issues to the jury." *United Servs. Auto. Ass'n v. Est. of Sylvia F.*, 2024 WL 4985302, at *6 (Miss. Dec. 5, 2024) (citing *Stewart v. Gulf Guar. Life Ins. Co.*, 846 So. 2d 192, 200 (Miss. 2002)). Here, Baker neither disputes nor provides any evidence to call into question the fact that her roof exhibited deteriorating conditions at the time Allstate denied her claim on that basis. There is no factual dispute that would prevent entry of summary judgment as to the issue of arguable basis.

Finally, Baker argues that Allstate "engaged in intentional misconduct rising to the level of malice in handling [Baker's] claim" and denying her claim "without any proper investigation." [148] at p. 22-23. Baker's "burden in proving a claim for bad faith refusal goes beyond proving mere negligence in performing the investigation. The level of negligence in conducting the investigation must be such that a proper investigation by the insurer would easily adduce evidence showing its defenses to be without merit." *Windmon v. Marshall*, 926 So. 2d 867, 873 (Miss. 2006). Baker points to the testimony of her designated expert, Emery Shannon, to support her position.

Baker argues that "[t]he deposition from Emery Shannon shows that it was storm damage that damaged [her] property." [148] at p. 18. Shannon, who is a general contractor with ES Construction, Inc., inspected Baker's property and provided an estimate for repair of damages in April of 2023. *See* [95], at p. 1. The Court notes that there is no expert report prepared by Shannon in the record. He testified that, in his opinion, the storm caused the damage to Baker's property

13

because he noticed that "shingles were up" or raised on the roof. [147], Ex. 10 at p. 12.[8] However, he provides no testimony regarding the state of the roof that would dispute Allstate's contention that deterioration and wear and tear was the cause of the damages. In other words, Baker does not provide any evidence that would "show [Allstate's] defenses to be without merit." *Windmon*, 926 So. 2d at 873. Baker provides absolutely no evidence or support that Allstate's determination lacked a reasonable basis as previously explained.

Although Baker disagrees with Allstate's conclusion and will, of course, be provided an opportunity to prove her breach of contract claim at trial, she has come forward with no summary judgment type evidence to indicate that Allstate lacked an arguable basis for the denial. Summary judgment in Allstate's favor on the bad faith claim is appropriate.

*Conclusion*

For the reasons set forth above, Allstate's Motion for Partial Summary Judgment [140] is GRANTED. Baker's bad faith claim is hereby DISMISSED *with prejudice*. Baker will be permitted to proceed to trial on her breach of contract claim.

SO ORDERED, this the 17th day of December, 2024.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE

---

[8] Notably, Shannon testified he does not "do roofing" work and that he did not get on the roof to inspect it. *Id*. at p. 10.